IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JESUS CISNEROS ALVAREZ,<br><br>Defendant. | No. CR 11-00716 WHA<br><br>**ORDER DENYING<br>MOTION TO DISMISS** |

### INTRODUCTION

Defendant moves to dismiss the indictment, charging him with illegal reentry under 8 U.S.C. 1326, on the ground that the removal proceeding giving rise to the removal order was fundamentally unfair. For the reasons set forth below, the motion to dismiss is **DENIED**.

### STATEMENT

On May 9, 1997, Immigration Judge ("IJ") Mimi Schooley Yam entered a removal order against our defendant Jesus Cisneros Alvarez (Def. Exh. A at JCA00567). The order did not state the basis for removal. Defendant was removed on May 10, 1997 (Def. Exh. A at JCA00564).

The notice to appear dated May 8, 1997, the charging document in removal proceedings, stated that defendant was an "alien present in the United States who has not been admitted or paroled" (Def. Exh. A at JCA00568–69). It further stated that defendant was subject to removal pursuant to 8 U.S.C. 1182(a)(6)(A)(i) and (a)(2)(A)(i)(II). Section 1182(a)(6)(A)(i) provided that "[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General is

inadmissible." Subsection (a)(2)(A)(i)(II) provided that, "any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of . . . a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), is inadmissible."

Defense counsel has submitted a recording of the removal proceeding resulting in the removal order against defendant (Def. Exh. B). The Court has carefully listened to the recording, parts of which, as indicated below, are inaudible. The following is a description of what occurred at defendant's removal proceeding, based on the Court's review of the recording provided by defense counsel.

At the beginning of the four-minute recording, defendant's immigration case was called. An interpreter was identified as present and interpreted for defendant's case. Defendant was informed that he had the right to be represented by an attorney of his own choice and that he had the right to request termination of removal. Defendant was made aware that a pro bono attorney was present in immigration court and willing to represent him in that day's proceeding. Defendant was placed under oath. Defendant was asked if he would like the assistance of the pro bono attorney. He answered, through the interpreter, yes. The pro bono attorney was asked if he had had an opportunity to review the charging document. He responded yes. He was then asked if he was satisfied that service was proper. He responded yes. He was asked if he waived formal reading of the charging document. He responded yes. He was then asked if he was ready to plead. He responded yes. Next, he was asked "how do you plead?" The pro bono attorney's response to that question, which lasted approximately one minute and fifteen seconds was inaudible. At the end of his response, the IJ marked the charging document into evidence, and asked the government if it had anything further. The government's response was inaudible. The IJ then stated, "Based on the, uhh, counsel's position, I would enter order of removal in each case. And each individual will be ordered removed to their native country." (It appears that the pro bono attorney of the day may have been representing our defendant along with other respondents in immigration court that day.) The IJ then stated, "Jesus Cisneros Alvarez I have just ordered

2

you removed from the United States to Mexico. Do you accept my order or do you want to appeal it?" The interpreter responded in English, "I accept." The IJ asked another question, which was not entirely audible and then the recording ended (Def. Exh. B). There is no transcript of the proceeding. This order follows full briefing and a hearing.

*      *      *

At issue now is whether the removal proceeding, which took place on May 9, 1997, was fundamentally unfair. In order to show that the proceeding was fundamentally unfair, defendant must show that his due process rights were violated and that he suffered prejudice as a result of the violation. If defendant can make both showings, then dismissal of the Section 1326 indictment is appropriate. This order concludes that defendant cannot show prejudice. Thus, dismissal of the indictment is not warranted.

## ANALYSIS

Defendant argues that his immigration hearing in 1997 did not comport with due process because he was not informed of various of his due process rights or his eligibility for relief, specifically regarding voluntary departure, and because there was no evidence in the record of proceeding to support the IJ's finding that he was removable. He further claims that the latter two of these procedural defects were prejudicial to him. As such, he seeks dismissal of the indictment charging him with illegal reentry in violation of 8 U.S.C. 1326.[*]

Section 1326 provides criminal penalties for aliens who reenter the country after being deported. Subsection (d) of that provision permits a defendant to collaterally attack his removal order in the later criminal case. To successfully challenge his removal order, a defendant must demonstrate that (1) he "exhausted any administrative remedies that may have been available to seek relief against the order; (2) the "proceedings at which the order was issued improperly

---

[*] After his removal on May 10, 1997, pursuant to the removal order dated May 9, 1997, defendant was subsequently removed on August 12, 1998, January 28, 2000, and June 9, 2008. Those removals were conducted pursuant to reinstatement of the removal order dated May 9, 1997 (Powell Exh. A at JCA00433, 483, 542). It is appropriate for defendant to challenge his 1997 removal order, given that the subsequent removals were pursuant to a reinstatement order. *See United States v. Lopez-Hernandez*, 2007 U.S. Dist. LEXIS 16251, at *10 (N.D. Cal. 2007) (Alsup, J.) ("for purpose of establishing a prior deportation, the government may not rely solely on a reinstatement order if the underlying deportation did not comport with due process. A defendant may challenge the underlying deportation order on due process grounds.").

3

deprived [him] of the opportunity for judicial review"; and (3) the entry of the order was fundamentally unfair."

This order first considers the fundamentally unfair prong of Section 1326(d) because that is the heart of the dispute. Because this order concludes that defendant has not established that entry of the removal order was fundamentally unfair, it does not address prongs one and two.

Defendant claims that the removal proceeding was fundamentally unfair for two reasons. *First*, that the IJ entered an order of removal against him without any evidence to support the finding of removability. *Second*, that the IJ entered an order of removal against him without informing him of plausible grounds for relief, namely voluntary departure. These are addressed in turn.

**1. EVIDENTIARY SUPPORT FOR REMOVAL.**

In order to establish that the IJ's entry of the removal order was fundamentally unfair, defendant must show both (1) that his due process rights were violated by the defects in the underlying removal proceeding and (2) that he suffered prejudice as a result of those defects. *United States v. Pallares-Galan*, 359 F.3d 1088, 1095 (9th Cir. 2004).

Defendant's first argument that his removal proceeding was fundamentally unfair is based on his claim that there was no evidentiary support for his removal, and therefore, his proceeding should have been terminated. Because it was not terminated, he claims prejudice.

This main section proceeds to first consider whether there was a due process violation. Concluding that there was, the order moves on to analyze whether defendant has shown prejudice from this procedural defect. He has not.

**A. Due Process Violation.**

The constitutional due process requirements for a removal proceeding are satisfied by a full and fair hearing. *See Ramirez v. INS*, 550 F.2d 560, 563 (9th Cir. 1997). An IJ is required to sustain a charge of removability "only on the evidence produced at the hearing." 8 U.S.C. 1229a(c)(1)(A). Our court of appeals has instructed that IJs, "although given significant discretion, cannot reach their decisions capriciously and must indicate how they weighed the

4

factors involved and how they arrived at their conclusion." *Sagaydak v. Gonzales*, 405 F.3d 1035, 1040 (9th Cir. 2005).

Defendant contends that there was no evidence in the record of proceeding to support the IJ's finding that he was removable. Here, the IJ stated "based on counsel's position, I would enter order of removal in each case" (Def. Exh. B). Unfortunately, counsel's position was inaudible in the recording of the removal proceeding and the audible parts of the recording do not include any other explanation by the IJ of how she arrived at her conclusion or which documents she considered. Neither does the order of removal provide the basis for her decision.

Defense counsel correctly pointed out in the briefing, and emphasized at the hearing, that the Supreme Court has held that "[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." *SEC v. Chenery, Corp.*, 318 U.S. 80, 87 (1943). The Supreme Court explained:

> [W]e emphasize[] a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.

*SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). Congress has designated to immigration courts, the power to make factual findings regarding removals. 8 U.S.C. 1229a(a)(1) ("An immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of an alien."). Thus, a "judicial judgment cannot be made to do service for an administrative judgment." *Chenery*, 318 U.S. at 87.

The order of the IJ dated May 9, 1997, stated, "respondent was ordered removed from the United States to Mexico" (Def. Exh. A at JCA00567). No basis for removal was stated. The form titled warning to alien ordered removed or deported, stated that defendant was "prohibited from entering, attempting to enter, or being in the United States: for a period of 5 years from the date of your departure from the United States because you have been found inadmissible under Section 212 of the Act and ordered removed from the United States by an immigration judge in proceedings under Section 240 of the Act." The signature on the form is illegible, but the

5

following typewritten text is printed under the signature line, "(Signature of officer serving warning)" (Def. Exh. A at JCA00565). The warrant of removal/deportation order, signed by an INS official stated, defendant "is subject to removal/deportation from the United States, based upon a final order by an immigration judge in exclusion, deportation, or removal proceedings . . . and pursuant to the following provisions of the Immigration and Nationality Act: Section 212(a)(6)(A)(i) [8 U.S.C. 1182 (a)(6)(A)(i) and] Section 212(a)(2)(A)(i)(II) [8 U.S.C. 1182 (a)(2)(A)(i)(II)]. Each of the documents is contained in the record of proceeding which is the official file containing the documents for an alien's case, created by the immigration court. The record of proceeding did not contain any conviction documents.

The notice to appear alleged that defendant was "an alien present in the United States who has not been admitted or paroled" (Def. Exh. A at JCA00568). It charged defendant with inadmissibility, alleging that he was present in the United States without inspection and having been convicted of a crime involving controlled substances in violation of Sections 1182(a)(6)(A)(i) and (a)(2)(A)(i)(II), respectively. Under these charges, the government had the burden of establishing the alienage of the charged individual. 8 C.F.R. 1240.8(c). If the government met its burden, the burden then shifted to the charged individual to establish by clear and convincing evidence that he was lawfully in the United States pursuant to a prior admission or that he is clearly and beyond a doubt entitled to be admitted to the United States and is not inadmissible as charged. *Ibid*.

The regulations governing removal proceedings required the charged individual to plead to the notice to appear by stating whether he admitted or denied the factual allegations and admits removability. 8 C.F.R. 1240.10.

Based on the record of proceeding and recording of the removal proceeding, there is no evidence within the purview of what a reviewing court is authorized to review at this stage, that shows that the IJ had before her evidence that established alienage. Indeed, the most crucial piece of evidence, the answer to "how do you plead," is unavailable to this Court because the recording is inaudible.

Because the recording of the removal proceeding is inaudible the government has indicated it does not contest that defendant's removal hearing violated due process (Phillips Decl. ¶ 6). Given the inability to hear large parts of the recording and the government's position that it does not contest that defendant's removal hearing violated due process, the order is willing to conclude that the due process prong of the fundamentally-unfair inquiry is satisfied and turns next to the prejudice inquiry.

### B. No Prejudice.

To show that entry of the removal order was fundamentally unfair, defendant must not only show a due process violation, but must also show that he suffered prejudice as a result of any asserted defect in the removal order against him. *United States v. Reyes-Bonilla*, 2012 WL 360771, at *4 (9th Cir. 2012). Defendant does not need to show that he would have actually been granted relief. He must show only that he had a "plausible ground for relief" from deportation. *United States v. Arrieta*, 224 F.3d 1076, 1083 (9th Cir. 2000). "A plausible claim to relief, however, requires some evidentiary basis on which relief could have been granted, not merely a showing that some form of immigration relief was theoretically possible." *Reyes-Bonilla*, 2012 WL 360771, at *10. "Once [the defendant] makes a prima facie showing of prejudice, the burden shifts to the government to demonstrate that the procedural violation could not have changed the proceedings' outcome." *United States v. Gonzalez-Valerio*, 342 F.3d 1051, 1054 (9th Cir. 2003).

Prejudice is not shown here because the government had evidence to show that defendant was, in fact, a citizen of Mexico and did not have legal status in the United States (Gov't Exh. A). Indeed, such evidence included defendant's prior application for voluntary departure. Had defendant contested the charge, the IJ could have considered this evidence. *See Gonzalez-Valerio*, 342 F.3d at 1055–56.

### 2. NO PLAUSIBLE BASIS FOR RELIEF.

Defendant's second claim that his removal proceeding was fundamentally unfair is based on his argument that the IJ did not advise him of his alleged eligibility for voluntary departure, and that he was prejudiced as a result of this procedural defect. The order first addresses whether

7

there was a due process violation. Concluding that there was, it then turns to the prejudice inquiry and finds that defendant was not prejudiced.

### A.  Due Process Violation.

"The duty of the IJ to inform an alien of his eligibility for relief is mandatory, and the failure to do so constitutes a violation of the alien's due process rights." *Gonzalez-Valerio*, 342 F.3d at 1054. The parts of the recording that are audible do not include an advisement to defendant of eligibility for voluntary departure. Because the recording of the proceeding is inaudible, the government does not contest that there was a due process violation. Thus, this order concludes that the due process prong of the fundamentally-unfair inquiry is satisfied here and turns now to the prejudice inquiry.

### B.  No Prejudice.

Defendant claims prejudice based on the IJ's failure to inform him of his alleged eligibility for voluntary departure. He makes no showing of such prejudice.

#### *(1)  Standard.*

An immigration judge may grant voluntary departure if the alien makes a request prior to or at the master calendar hearing, makes no additional requests for relief, concedes removability, waives appeal of all issues, and "[h]as not been convicted of a crime described in Section 101(a)(43) of the Act and is not deportable under Section 237(a)(4)." 8 C.F.R. 1240.26(b). Crimes listed under Section 101(a)(43) are deemed aggravated felonies. The alien has the burden of establishing eligibility for requested relief. And "if the evidence indicates that one or more of the grounds for mandatory denial of the application for relief may apply, the alien shall have the burden of proving by a preponderance of the evidence that such grounds do not apply." 8 C.F.R. 1240.8(d).

#### *(2)  Applicable Law.*

The government contends that defendant cannot meet his burden because he had aggravated felony drug convictions at the time of his removal hearing, which would have made him statutorily ineligible for voluntary departure. Defendant responds that he made a prima facie showing of eligibility for voluntary removal because he was never charged as an aggravated felon

8

and no conviction documents were in the record of proceeding, therefore, the IJ did not have a factual basis upon which she could have found defendant to be an aggravated felon. But our court of appeals has held that an alien's conviction could properly have been considered by the IJ if the alien had sought discretionary relief, regardless of whether it was charged in the notice to appear as a ground for removal. *See Gonzalez-Valerio*, 342 F.3d at 1055–56.

Defendant was earlier convicted, as charged in count one of the 1996 information, for a violation of California Health and Safety Code Section 11379(a). Count one charged the following (Def. Exh. A at JCA00276):

> Sale or transportation of a controlled substance, in violation of Section 11379(a) of the Health and Safety Code, a felony. Defendant[] Jesus Alvarez Cisneros . . . on or about the 12th day of October 1996, did willfully and unlawfully transport, import in the State of California, sell, furnish, administer, and give away, and offer to transport, import into the State of California, sell, furnish, administer, and give away, and attempt to import into the State of California and transport a controlled substance, to wit, Methamphetmine.

Relying on a 2007 decision by our court of appeals holding that Section 11379(a) convictions are not categorically aggravated felonies, defendant argues that the Court must evaluate his conviction under the modified categorical approach, and that under the modified categorical approach, there is not sufficient documentary support to conclude that defendant's conviction constituted an aggravated felony. *See Sandoval-Lua v. Gonzales*, 499 F.3d 1121, 1128 (9th Cir. 2007). The government rejects the application of *Sandoval-Lua*, here, contending that when considering whether an alien had a plausible basis for relief from removal, the law in existence at the time of the removal proceeding is controlling. *See United States v. Lopez-Velasquez*, 629 F.3d 894, 899–900 (9th Cir. 2010) ("In general, when an intervening law renders an alien eligible for discretionary relief for which he was ineligible at the time of his deportation hearing, the proper remedy is for the alien to file a motion to reopen.")

Defendant responds and cites to *Bousley v. United States*, 523 U.S. 614, 620–21 (1998), claiming in *Bousley*, the Supreme Court "explicitly held that subsequent judicial interpretations of substantive criminal statutes apply retroactively even to cases on collateral review" (Reply Br. at 6). A closer review of *Bousley*, however, renders it distinguishable. In *Bousley*, the Supreme

9

Court concluded that new substantive federal criminal statutes will, in certain instances, be applied to cases which have become final before new rules are announced. The Supreme Court reasoned that "decisions of this Court holding that a substantive federal criminal statute does not reach certain conduct, like decisions placing conduct beyond the power of the criminal law-making authority to proscribe" merit applying the rule of retroactivity. "For under our federal system it is only Congress, and not the courts, which can make conduct criminal." *Bousley*, 523 U.S. at 620–21.

Here, the issue is about classification of an offense as an aggravated felony, not whether certain conduct previously criminalized was later determined to be not criminal. Significantly, defendant was not charged in the notice to appear as being deportable on the basis of having been convicted of an aggravated felony. Had he been so charged, then *Bousley* would have more force. For example, had defendant been charged as deportable on the basis of a conviction for an aggravated felony, a subsequent judicial decision holding that the crime for which defendant was convicted (and which served as the basis for deportation) was not categorically an aggravated felony would call into question whether the conviction was for an aggravated felony. If, once the modified categorical approach were applied, it was determined that the conviction was not for an aggravated felony, then under the rationale of *Bousley*, it would follow that defendant suffered a consequence — namely deportation — that was not intended by Congress.

But the situation here is different. The bases for defendant's removal — being an alien present in the United States without being admitted or paroled and being an alien convicted of a crime relating to a controlled substance — were then and still are valid grounds for removal. This has not been undermined by a subsequent judicial ruling.

To be more specific, the issue here is that a decade after the IJ entered the order of removal against defendant, our court of appeals held that a conviction under Section 11379(a) was not categorically an aggravated felony. This is relevant, not because it would have undermined the grounds for which defendant was charged as removable, but because, as defense counsel has argued, it could have meant that defendant had a plausible basis for relief from removal, namely voluntary departure, if, after the modified categorical approach were applied, his

10

conviction was determined to not be an aggravated felony. At the hearing, defense counsel emphasized that two decision are instructive: *Tapia-Fierro v. Holder*, 2011 U.S. Dist. LEXIS 1000 (C.D. Cal. Jan. 5, 2011) (Real, J.) and *United States v. Vidal-Mendoza*, 2011 U.S. Dist. LEXIS 44333 (D. Or. Apr. 25, 2011) (Marsh, J.). While neither of these decisions is binding on this Court, they are considered herein in light of counsel's heavy reliance on them at oral argument.

In *Tapia-Fierro*, the district court in the Central District of California granted petitioner's petition to reopen his immigration proceedings after he was deported for a 1999 manslaughter conviction. The reason was that in 2004 the Supreme Court held that convictions for manslaughter were not aggravated felonies for purposes of deportation. Thus, this was a situation where a subsequent judicial decision rendered a deportation order invalid. That is not the case here. 2011 U.S. Dist. LEXIS 1000.

In *Vidal-Mendoza*, the district court in Oregon, concluded "that while an IJ's duty is limited to informing an alien of *reasonable possibilities* that the alien is eligible for relief at the time of the hearing, the reasonableness of that advice may be evaluated in light of subsequent precedent." *Vidal-Mendoza*, 2011 U.S. Dist. LEXIS 44333, at *7–8. In reaching this conclusion, the district court cited to decisions in our court of appeals applying later-decided authority in determining whether a particular offense constituted an aggravated felony, when the basis for removal was conviction for an aggravated felony.

This order is not convinced that later-decided authority applies when considering whether defendant had a plausible ground for relief from removal in 1997. As our court of appeals recently held, a plausible claim for relief requires a basis on which relief could have been granted, "not merely a showing that some form of immigration relief was theoretically possible." *Reyes-Bonilla*, 2012 WL 360771, at *10. Thus, as to the prejudice prong of the fundamentally unfair inquiry, the order finds no basis for applying later-decided law to determine if defendant had a plausible basis on which the IJ could have granted relief.

### *(3)* *Conviction*.

At the time of defendant's removal proceeding, there was no precedent in our court of appeals on the issue of whether the full range of conduct encompassed by Section 11379 constituted an aggravated felony. Indeed, the only decision addressing 11379 was an unpublished decision, which explicitly stated the decision may not be cited to or by the courts of this circuit. Another decision, however, by our court of appeals, with different, but analogous facts does provide guidance. In *United States v. Lomas*, 30 F.3d 1191, 1195 (9th Cir. 1994), *overruled by United States v. Rivera-Sanchez*, 247 F.3d 905 (9th Cir. 2001), a decision in existence at the time of defendant's removal proceeding, our court of appeals held that the full range of conduct encompassed by California Health and Safety Code Section 11352 constituted an aggravated felony. As discussed above, *Lomas*, was good law at the time of the removal proceeding, which is what is relevant for our inquiry here.

The statutory language of Section 11352(a) contains the same statutorily broad language of Section 11379(a). That language is as follows: "every person who transports, imports into this state, sells, furnishes, administers, or gives away, or offers to transport, import into this state, sell, furnish, administer, or give away, or attempts to import into this state or transport any controlled substance. . . " Thus, the IJ would have had a clear basis on which to find defendant's conviction under Section 11379(a) was a conviction for an aggravated felony, thereby making him ineligible for voluntary departure. As such, defendant has not made a showing that he had a plausible basis for relief, namely voluntary departure. The order, therefore, need not consider whether defendant's conviction under Section 11383 was also a conviction for an aggravated felony.

Having considered both grounds on which defendant claims prejudice, resulting from procedural defects, the order concludes that defendant has failed to making a showing of prejudice as to either ground.

### CONCLUSION

The Court wishes to acknowledge the excellent analysis and work done by defense attorney Galia Phillips in preparing this motion. Although she has not prevailed, she has raised an issue precisely unanswered by our court of appeals.

12

For the above-stated reasons, the motion to dismiss the indictment is **DENIED**. The case will proceed to trial at **7:30 A.M. ON MARCH 26, 2012**, as scheduled  The final pretrial will be held at **2:00 P.M. ON MARCH 19**, as scheduled.

**IT IS SO ORDERED.**

Dated: March 13, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE